Good morning. May it please the Court, Hartley West for the United States. I'll reserve three minutes, if I may, for rebuttal. The District Court erred in its fee award, first, by failing to consider the limited extent of the liquidator's success, second, by not giving the government an opportunity to review and to challenge non-privileged billing information, and third, by inadequately explaining its fee award analysis. I have some difficulty with your first argument, simply because, with respect to the civil forfeiture, there was a complete success. It went away. It did go away, but the liquidators filed their claim in that civil in rem forfeiture action, not seeking simply to dismiss the government's civil forfeiture, but seeking to recover $2.5 million worth of property. Except ordinarily, when we look at litigation, we look at what happened to the litigation, who prevailed in the litigation. Even if there's some other method by which they can obtain the underlying relief, I guess I just have difficulty kind of unbundling it the way that or not unbundling it the way you want to do. Well, I think Your Honor is absolutely right for the prevailing party analysis. But the second step of that, this Court held barely more than a year ago in McCown that a district court must, and it used the word must, reduce a fee award where the success was limited and there was no meaningful public benefit. And here, they were trying to dismiss the civil forfeiture action that the government had filed against the funds. But, of course, they had come into that case on their own, making their own affirmative claim to that property, and that they did not obtain. And the reason for that is the context. You know, it strikes me as the government, it doesn't really come into this piece of the litigation with entirely innocent hands, because the time was up and the government should have known that from the get-go. Well, yes, there was a document that the government came across. It frankly isn't as simple as the liquidators make it seem where they said, oh, we raised this. It was one of many affirmative defenses raised in a really an everything-in-the-kitchen-sink answer. Well, if the government had realized what it had in terms of the timing, it would never have brought the civil forfeiture piece of this at all, correct? That's right. So why isn't the flip side of that appropriate when the case, the civil forfeiture case goes away, that is, all the fees, et cetera, related to the thing that should never have happened are awardable? Well, I think the answer to that is because of what actually was going on here. And the factual backdrop is the government had long before filed the criminal forfeiture proceedings. The defendant, Pavel Lazarenko, had already long before been convicted, and after the liquidators filed their affirmative claim in the civil forfeiture, the government notified the liquidators that it was planning to proceed against the funds through the criminal forfeiture and that it was seeking to stay the civil forfeiture. So there was really nothing that the liquidators needed to do. It wasn't as though they couched it as that they were defending themselves. Well, that doesn't really go to the prevailing party point, does it? No, it doesn't go to the prevailing party. It doesn't even go to limited success. What it goes to is the reasonableness of the activities in the specific as to whether they were appropriately expended. And that's kind of a different question, it seems to me. It is a different question, but I believe it is also related, because the ultimate inquiry for this Court is that the fees must be reasonable in light of the success obtained. And the fact is that the liquidators were seeking to get the $2.5 million worth of property. They didn't get it. And just to be clear, because this might be a nuance of forfeiture law, had the government not had that criminal forfeiture proceeding at all and had it, you know, not only not already existed but not been able to exist, even if the liquidators in that context had won the dismissal, they would not – it's not entirely clear that they would have therefore then recovered the $2.5 million. Yes. I'm not concerned about that. I know that's kind of the crux of your argument is who got the money, but I'm looking at who had to expend litigation funds on lawyers, which is really a different question. If there are five ways to get to an answer and you use four of them unnecessarily or inappropriately, the other side is caused to spend money that it shouldn't have to spend, even if number five is valid. I guess that's my concern with it. Well, I hear your concern. I would respond that I do think that there has to be a difference between the prevailing party – everything you said I think is right for why they were the prevailing party, and that's something that the government has not raised on appeal. But the fact is that they did not end up succeeding 100 percent because they did not get that property. And if the Court agrees with that, then the district court had to reduce the fee amount under McAllen in order to take into account that limited success, and the government suggests that the court would have to remand it for that purpose, unless, of course, this Court were to find that because the success was really so technical on the statute of limitations ground and that they – it was just a technical de minimis victory for them, then it would not need to remand. It could say that, like in Farrar, the only reasonable fee was no fee at all. But regardless, the case would have to be remanded for the district court to provide to the government the nonprivileged billing records. The district court admitted in its first order, immediately preceding the attorney fee award, that the records that the government saw were insufficient to support a fee award. And the fee award analysis, the litigation, is supposed to be an adversary process that was recognized by this Court in MGIC. The government stands in the shoes of the client, basically. They are not – the government should not have to pay any fees that a client would not reasonably need to pay, and the government should have the same opportunity to review and to rebut, if necessary, any fee awards claimed. This was particularly important here because the district court judge who made the fee award determination was not the one who presided over the underlying litigation in this case. And that, therefore, kind of undermines the reason that this Court usually views that with an abuse of discretion standard of review. Usually, the district court was pretty familiar with everything that was going on below and so might be able to take a quick look at it. But still, the adversary process would be important there. It is just all the more important here where the district court was not in that position. Kagan. So if we were to remand this, would the district court have another opportunity – another go-around to decide if it's really privileged or what are you asking? Or let's say the court says, yes, this is really privileged, but then gives reasons for the rationale for upholding the amount of fees. Would that be sufficient? Well, I would have a hard time finding that any statement – I mean, a normal statement would be research re-statute of limitations for motion for summary judgment. There's just no way that kind of statement is privileged. You're looking for something with a little more precision. If there's some redaction, that might be appropriate. Exactly. Exactly. The court can redact any information that really is privileged. Isn't that what you asked for? I thought during the case you asked for redacted information. Did you ever get it? No, we didn't. And I understand the liquidators say that they offered to provide that to the government. That statement actually is a little bit disingenuous because the letter in which they offered that was conditioned upon the government's acquiescence that the liquidators were entitled to fees. So they said, we'll provide redacted information if you agree we get fees. And besides, it was the court that decided to look at it in camera, not the other side. So you're – you're objecting to the court's decision, basically. Right. So the way it came about was – excuse me – in opposition to the fee request, the government said we need the opportunity to review and challenge the billing records. And then in reply, the liquidators suggested that the court review them in camera and then the court issued an order saying that it intended to review them in camera. The government then – a little bit outside the scope of the supplemental briefing that the district court had requested, but the government then reiterated – let me see if I have the exact language here. The government said that this in-camera procedure, and this is at ER 80, incorrectly puts the onus on the court and precludes the government from challenging the reasonable – the reasonableness of those fees. So any waiver argument just doesn't carry any water here. But the answer of what we ask is we ask first that this be remanded for the district court to expressly consider the limited success of the liquidators and for the district court to redact any privileged information, but to tell the court that it does need to give the government the opportunity to review and to challenge any nonprivileged information, and finally, for the district court to be required to give some sort of clear explanation of what its analysis was so that it actually would be reviewable by a court of appeals. And McAllen was very clear that it's not just reductions from or adjustments of the Lodestar calculation that need to be explained, but that the court needs to explain how it arrived at that Lodestar number with sufficient specificity to allow the appellate court to determine if there was an abuse of discretion in that analysis. If there are no further questions, I'll save the remainder of my time for rebuttal.  MS.  Certainly, you may do that. MR. LITTLE Good morning, Your Honors, and may it please the Court. My name is Rory Little. I represent the liquidators that have been appointed by the government of Antigua and Barbuda in this matter. Matt Jacobs from McDermott-Williams is seated with me at counsel table.  MCDERMOTT-WILLIAMS Counsel, the part of this that is of concern to me from your perspective is the inability of the government, your opposing counsel, to examine the time records and so forth that underlie the fee request. I don't actually understand why that was appropriate, why that wasn't an abuse of discretion, because there are so many nonprivileged reasons why somebody could object. You know, you had four lawyers looking at this, attending a meeting, or you had 400 hours, you know, examining the statute of limitations, that's excessive. All the normal things that litigation results in. Well, Your Honor, let me try to address that. There's a lot of different answers to that, but I do not believe for a second that it was an abuse of discretion. I'm shocked that you say that. But let me say why, because I think Judge Breyer really, he came to this litigation with an open mind. He didn't come to this litigation with a closed mind. Let me just say a couple of things, though. This litigation is a part of a much bigger piece of litigation, as I know Your Honors are aware. The government has seven people in the courtroom today. We have four. The very first meeting, before, after our property was seized and we had to respond, it was either that or lose the property, we had a meeting with the government. This is before we filed any answer. The government brought three lawyers and an agent. We brought three lawyers. I mean, this is not a case. But then you're arguing the merits of whether it was excessive or not. Not whether they have the right to examine it and make their arguments. And maybe Judge Breyer would come to the same conclusion and say, well, no, of course, given the context, it's not excessive. But in ordinary litigation, the other side always has that opportunity to make those objections. Well, let's, here's what the Supreme Court has said, don't turn fee litigation into a second major litigation. And when Justice Scalia writes in Pierce v. Underwood and Justice Brennan agrees with him, I think you can get a good indication of what the law is. And in Pierce v. Underwood, Justice Scalia says the reason the district court judge is in it, I'm going to answer your question. I hope so. The reason the district court judge has such a unique position in attorneys' fees litigation is because they're aware not only of what is in the record, but what may not be apparent from the record. That's true in every case. And in every other case I'm aware of, everybody gets to look at these records. And it isn't true in this case because he was not the trial judge. No, but he was. Judge Wallace, he was very familiar with the lawyers. And I understand. I read in here that Judge Breyer is a great lawyer. Well, let me just stop, okay? I didn't answer Judge Breyer's question. This is an important case. There's a lot of lawyers. You can go down and argue about how much you ought to be able to charge. But, you know, the essence of the time records from our review, which we have opportunity, and without saying anything about what's in there, they look pretty garden-variety about the kind of things people do to defend a case like this without disclosure of any privileged attorney-client theoretical case-management-type information. And to the extent I'm wrong about that, why can't you just redact whatever is the killer information? So, Your Honor, two things are true. One, I can direct you to lines, if you want, of things that are privileged. No, no, no. We're not going there now. I mean, because of the other major pieces of litigation that were happening on, this is very different than the Magic case when the Court says there's no reason. In this case, the Court says there is a reason. There was some privileged information in those billing records that would have given them strategy that we were using in the other litigation. So that's the answer to that. So you want to redact that. And we offer it. And how about this? How about incorporating Mr. X's edits? Your Honor. Or conference with so-and-so, who happens to be another attorney. Your Honor. I mean, why can't you just excise the privileged confidential information? There are two answers. The main answer, the most frustrating thing to me is that we sent the government a letter saying we will give you the redacted information, and they never responded. That's irrelevant at this point. That's irrelevant. Because the district court made a ruling that it was to be examined in camera, and it's that ruling that we're looking at, because regardless of whether there were good reasons or bad for the government not to take you up on that, they think they had good reasons not to get bamboozled here, and you think they were foolish. But you know what? What it does suggest is that you can provide redacted information. And we offered to do that, and they didn't respond. So you can do that. And we can. So that's not – there's no insurmountable practical problem that we're not – that we're missing. I don't think there's an insurmountable practical problem other than Judge Breyer knew these lawyers. He watched – if you look at the government's opposition to the fee motions, you will see that they were not interested in arguing about a reasonable fee in a party where the government – where we prevailed, which now they can see. They were interested in nitpicking every point that could be nitpicked. Why not? That's – everybody who has to pay fees has that opportunity to object. Not everybody. Your Honor, I mean, at the very least, the firm case of this Court, which is not an attorneys' fee award case, but it is a case involving attorneys' fees, is a case where this Court, a panel of this Court, approved the in-camera submission of billing records in order to protect work product protection. It can be done where it's necessary, but the – Judge Breyer found it was necessary. You just got done telling us you were willing to hand over the redacted version. And Judge Breyer found in his discretion that it wasn't – I mean, really, I truly believe this. He knew who he was dealing with. He did not want to turn this into a second major litigation with nitpicking of all the records. He got the records in-camera to see whether there was a valid, you know, plausible claim of privilege, and then you have to fairly infer that he looked at them and concluded exactly what you concluded. Well, we've looked at them, and we're not concluding that, it sounds like, at least for the video. Well, one of the other problems is that we don't have – you know, let's just say the in-camera setup is appropriate here. We have to have some foundation to figure out that he exercised his discretion appropriately. And you need some explanation. We don't really have anything. Well, I'm sorry, Your Honor. I really disagree. This Court has said when you are awarding a lodestar amount, you're not deviating up or down. The explanation could be, in the words of this Court, even conclusory. Certainly, the Supreme Court has said concise. Here's what Judge Breyer said. After he says he's not going to adjust it downward because he believes there was a significant benefit to the liquidators, a significant victory. He then says on Excerpt to Record 9, after a thorough review of the submission, the Court concludes the requested hours are reasonable. That's one. Not excessive, that's two. Not redundant, that's three. And not otherwise unnecessary, that's four. But this is an adversary process. In any litigation, if this were being – if you were on the other side here and a judge had said that the other side's fees were all entirely reasonable, but, no, you can't look at the timesheets, you'd be livid. Your Honor, really, I don't know that that's true on this record. And, please, what did we submit for a fee request in a case where the government litigated for seven months over a case that shouldn't have been filed? This is the summary judgment motion that we had to draw from the government's own records because they wouldn't review them themselves. This is not a simple summary judgment. That has nothing to do with this issue. Who has the entitlement to every penny? No, Your Honor, it has to do with this issue because we then submitted a fee request. Judge Breyer knew that there were seven months of litigation. We said we exercised billing judgment. We cut out all the invoices with regard to all the other litigation. We even cut out every invoice that mentioned both pieces of litigation so that it was a double count. We cut those out. Judge Breyer had before him a declaration from a well-regarded lawyer saying, here's the hours we expended reasonably, and we haven't even put in for the month of October, which is he had a reasonable. And all of this has nothing to do with whether the adversary should have an opportunity to examine and to make any objections that they have. What you say is true of absolutely every single fee request. The person putting it in, the judge is a smart person who's seen everybody, knows the lawyers. All those things are always true. Well, but this was a reasonable fee request on its face, and the judge has discretion, I think, under the case law, to develop the procedures that don't turn it into a second litigation. Well, let me just ask you from a practical standpoint. I know you don't – nobody wants to turn this into another litigation. But to the extent that it turns into a short review of this subject, you still will get your attorney's fees for that, correct? I think that's correct, Your Honor. I do – although I will tell you that the government is going to fight us every inch of the way. They are not going to concede anything. And the more they fight, the more you get. I wish you would ask them that question in rebuttal, please, and get them to say it on the record, because we don't have a good experience at this litigation. But, Judge Graber, I'm really trying to address your concern. That's true of a lot of counsel, isn't it? I mean, we've all tried lawsuits, and we know that these fee things can get to be problematic. But here's how I – here's the problem I see. If we get to the place as a court of appeals that we're going to judge whether or not a particular district judge is good about these things and then make a determination whether we need to review it or not, it just simply won't work. Judge Breyer is a fine person. I have no doubt about that. But I've had as much trial experience as he's had. But I'm sure my colleagues don't want to turn it over to me without them looking at it. So let's get back to the fact. The fact is that the government, in representing the taxpayers, has a right, in my judgment, unless there's something in the record that shows otherwise, to get as much information as they can without interfering with any privilege that you have. Now, that just simply wasn't done. I understand the negotiations, the rest of that, but from the record itself, it wasn't done. Then there was the question of the three matters that are involved. There was a senior partner that put in a declaration saying, I have been advised that we have gotten those segregated out. I'm sure the government wants to know about that. And then they've got to have information as to whether the time was reasonable spent on a particular task and whether the fee was reasonable. Now, that information can be given them in a redacted form. So it strikes me that we're going to spend an awful lot of time here getting back to what we probably should have done in the beginning, and that is let them have what they need to have to make a decision, and then Judge Breyer probably would have come out with the same figure. Yeah. Let me just say, Your Honor, they didn't contest Gordon Greenberg's declaration about how he exercised billing judgment, and they don't need billing records to check that. They didn't question that. They didn't ask for any further information about that. So at least on that part, I think that they've weighed that. That's fine. But let me just say, the Fisher case in this Court and the Firm case from this Court both stand for the proposition that if this panel writes a rule that says in every fee proceeding the adversary billing records must be turned over, even redacted, but must be turned over in every proceeding without any discretionary exercise by the judge, that will be a new rule. That will be not consistent with Fisher, in my opinion, and not consistent with Firm. The alternative is that we would take all these billing records in camera and make the decision ourselves without any aid from the opposition. And not knowing the lawyers and the litigation. Right. I don't think that would be appropriate. With this panel, you'd be in good shape. But, you know, we have some panels that have never been in a court, so. Your Honor, it's not that I wouldn't trust the Court with that, but I mean, I agree with you that if anyone's going to do that, it should be the district court. I really do agree with that. And if you feel that that's appropriate in this case, then that should be the order. I do believe Judge Breyer is very likely to say, I already reviewed these thoroughly, as I said. I cut the costs. I'll now receive the further application for fees, both for the appeal and the further district court proceedings, and now I'll rule. I really believe that it would be an exercise in asking him to articulate his discretion when he has already exercised his discretion. We have a number of fee cases, though, in which we've been pretty strict with district courts, requiring them to go through that exercise of explaining their exercise of discretion with regard to fees. And I think the rule that you're so concerned about is in fact the default rule. There is, in appropriate cases, discretion to withhold fee records or billing records, but the default position is that it's always done. I agree that it's the default position, but I think the facts of this case say that Judge Breyer took it out of that standard. Let me just say that Judge Breyer – I'm sorry, Your Honor. You made a point and I was going to answer it, and now I forgot what I was going to say. But I do think that Judge Breyer exercised his discretion in this case, which was a very small fee request given the amount of litigation that had to be done, and he believed that the government didn't contest any of the billing judgment that had been done. If the Court remands, I hope you'll ask on rebuttal the question, are we going to be entitled to our fees for further litigation, because I think we would certainly pursue them. If there are no further questions, Your Honors, thank you. Thank you. Two points, Your Honor. First, the Liquidators' Counsel was saying that the government had waived some sort of objection to the declaration of Mr. Greenberg. To be clear, the government asked for all of the billing records underlying all of the declarations, so nothing there is waived. And second, I think that a remand, just I want to make sure that it's clear that the government is asking for any non-privileged billing information, including a basic description of the task that was performed. And the reason I focus particularly on that, I'm sure that that's ordinarily what we would all think of, but at SER 188, which was the Liquidators' written offer to redact, they stated, while we are willing to give you fully redacted invoices, these invoices themselves will contain only the dates, hours billed, and the identity of the attorney or paralegal who performed the task. So at least early on, their idea of redactions was to exclude any description of the task performed at all. Counsel suggested that because this Court, this panel, had reviewed in camera the redacted invoices, that the redaction was to, his phrase was, to those lines that would be privileged, and we suggest that it's only those particular lines, if they are in fact privileged, that be redacted. So as you go forward in this litigation to fight over the amount of fees, to the extent that the they're entitled, assuming they're entitled to, in general, a fee award as a condition, I guess the more you fight, it's possible that their fee claims will go up. Correct? Well, I can definitely say that it's possible, but I'm sorry that I don't know the particular answer to that. If the Court wants to. Coordinately, fees expended in obtaining fees are to be awarded if the underlying if there's a statute or other reason to award fees. And I assume that's true. It's just not a particular question that I had looked at. But assuming that, as I'm sure Your Honor is correct, then yes, they would be entitled to them. I think I could also say, I don't know how the Court will come out, but if the Court decides that fees are awardable, in other words, that there was substantially prevailing, and then we decide whatever else we might decide, if you wanted either side upon agreement to avail yourself of our mediator on those details, we would, I'm sure, through the court clerk's office, be happy to make that available. Well, the government remains, as it was previously, amenable to a mediation, but prior discussions regarding that had not proved fruitful. All right. Thank you. Thank you. The case just argued is submitted. We appreciate very much the arguments of counsel. And for this session, we are adjourned. Thank you. All rise.
judges: Wallace, Graber, McKeown